IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

LACEY CROWE,　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　　) Case No. 11-690 -CV-FJG
　　　　　　　　　　　　　　　　　　　　　)
BOOKER TRANSPORTATION　　　)
SERVICES, INC., et. al.,　　　　　　　)
　　　　Defendants.　　　　　　　　　　)

## ORDER

Currently pending before the Court is Plaintiff Lacey Crowe's First & Second Motions to Compel (Doc. Nos. 70 and 102).

**I.　Background**

Robert Bucklin, Jr. was killed on August 11, 2010, when a bicycle he was riding, collided with a tractor-trailer in Oklahoma. Sammy Byrd was the driver of the tractor-trailer on behalf of Booker Transportation Services, Inc.. On July 13, 2011, Plaintiff Lacey Crowe, daughter of Bucklin, filed this wrongful death action against Defendant Byrd and Defendant Booker Transportation Services, Inc.. (Doc. No. 1, 24, & 36).

Plaintiff has filed two Motions to Compel seeking discovery materials from Defendants (Doc. No. 70 & 102).

**II.　First Motion to Compel (Doc. No. 70)**

　　**(A)　Driver Qualification and Personnel Files**

Plaintiff seeks materials Booker added to Byrd's "driver qualification file" and "personnel file" after the crash pursuant to the Federal Motor Carrier Safety Regulations ("FMCSRs"). Booker objects. Plaintiff believes Booker is being disingenuous because Booker previously

produced these materials for FMCSR after the crash for hiring purposes, but has refused to produce for Plaintiff.  Hiring purposes refers to the following:  FMCSRs require Booker to confirm Byrd's employment history with prior Department of Transportation ("DOT") regulated employers within 30 days of hiring[1].  Booker sent requests to Byrd's former employers.  Some of the employers did not send responses back confirming several of Byrd's prior DOT regulated employers until after the crash.  Booker then included these post-crash employment confirmations in the driver qualification file it produced to Plaintiff for Byrd, along with the representation that the file being produced was the driver qualification file maintained for Byrd on the date and at the time of the accident in question.   (Doc. No. 70, 71 & 76).

Defendant states Plaintiff's request is not properly limited in time and scope and is not reasonably calculated to lead to the production of admissible evidence at trial.  Defense counsel routinely limits production of driver qualification files and personnel files in trucking litigation to materials that were generated or requested on or before the date of the accident in question.[2]  The extent of the production of documents provided by Defendants to Plaintiff in this case is no different and is properly limited in both time and scope.  In full candor, Defense counsel states he was initially under the impression that the files being produced were the files that existed on the date and at the time of the accident.  Later, it was discovered that pre-employment requests made by Bryd's employers before the accident, but that were not received by Booker until after the accident, were included in the initial production of documents.  Defendant states this topic was not hidden and was discussed in some detail during the depositions of Booker personnel. (Doc. No. 73).

---

[1] Byrd was hired on June 30, 2010 or July 1, 2010.
[2] Plaintiff's counsel states he has never handled a trucking case in which the entire driver qualification and personnel files weren't produced.  (Doc. No. 70, 71, & 76).

2

**Ruling**: Without legal authority supporting this request, the Court **DENIES** as improper.

**(B) <u>Medical Authorization to Obtain Post-Crash Hospital Records</u>**

Although Defendants have provided Plaintiff with EMS records post-crash, Plaintiff seeks records from the hospital where Byrd was taken for further examination. Byrd testified he was taking medication for high blood pressure at the time of the crash and that he had not taken it for over 24 hours when the crash occurred. Plaintiff believes the hospital records will show that Byrd's blood pressure, at the time of the crash, exceeded the maximum permitted by FMCSR regulations (over 180) and thus, Byrd was disqualified from driving and should not have been on the road. EMS records indicate a blood pressure reading of 192. Further, Byrd told Booker Safety Director on the night of the crash that he was being taken to the hospital because of the concern for his blood pressure. (Doc. No. 70, 71, & 76).

Defendant states that it is normal to have elevated blood pressure after an accident. As such, it is important to note that Byrd's blood pressure reading prior to the accident and about 35 minutes after the accident was well under the 180 threshold. Further, the records are excluded under physician-patient privilege. <u>State ex rel Hayter v. Griffin</u>, 785 S.W.2d 590 (Mo.App. W.D. 1990). In <u>Hayter</u>, the Court stated that medical records generated for purposes of treatment are privileged and cannot be discovered. (Doc. No. 73).

Plaintiff argues <u>Hayter</u> does not apply in this case because it dealt only with pre-crash medical records, not post-crash medical records. Plaintiff states this is a logical distinction to make because post-crash medical records are relevant to (and are direct evidence of) potential causes of the crash. (Doc. No. 76).

**Ruling:** Where Defendant has not placed his medical condition in controversy, the physician-patient privilege is not waived. <u>Cerro Gordo Charity v. Fireman's Fund American</u>

Life Insurance Co., 819 F.2d 1471, 1477-1480 (8th Cir. 1987) (holding under similar Minnesota physician-patient privilege statute that if Defendant had not placed his medical condition in controversy in the present suit or made public his medical condition in a previous proceeding, then the physician-patient privilege had not been waived). As such, Plaintiff's request is hereby **DENIED**.

### (C) Medical Authorization to Obtain Byrd's Department of Transportation ("DOT") Physical Records

According to FMCSRs, a driver is typically required to get a physical every 2 years. Due to a heart condition, Byrd was required to get a physical every year. However, Plaintiff claims that inexplicably, after the accident Byrd began to get physicals every 6 months - June 22, 2010; December 22, 2010; June 23, 2011; and December 7, 2011. FMCSRs require physicals every 6 months for individuals diagnosed with blood pressure equal to or greater than 180 systolic or 110 diastolic. Plaintiff seeks a medical authorization to obtain the medical records from Byrd's DOT physicals to find out why Byrd began getting physicals every six months. Specifically, Plaintiff believes the records will show Byrd's blood pressure exceeded the maximum allowable level at the time of the crash. Plaintiff states that medical records are discoverable from examinations done for the purpose of meeting federal regulations. Hayter, 785 S.W.2d 590, 596. Since Byrd's DOT physicals were done for the purpose of meeting FMCSR, Plaintiff states it is entitled to a medical authorization to obtain these records. (Doc. No. 70, 71, & 76).

Defendant states that Plaintiff's interest in why Byrd would voluntarily exceed the DOT regulations and recertify himself with greater frequency than he was required to by FMCSR does not warrant the broad after-the-fact discovery. Defendant states it has already produced the medical examiner's certificate and long form DOT physical in effect on the date and time of

the accident - June 22, 2010 - in which Byrd passed. Plaintiff now seeks production of long form DOT physicals not issued until after the accident in which Byrd passed. These documents were provided to opposing counsel by Byrd from his wallet during his deposition. Defendants state these post-accident DOT physicals have no relevance to the underlying lawsuit, are completely unconnected with the date and time of the accident, are not limited in time and scope and are not reasonably calculated to lead to the production of admissible evidence at trial. Further, Byrd has already testified that the December 7, 2011 physical he obtained after accident was done at the request of a new employer that required a new certification, regardless of whether the prior certification had expired. None of these post-accident DOT physical examinations were needed to meet federal regulations on the date of the accident. As such, requests for these records are overly broad, not properly limited in time and scope and not reasonably calculated to lead to the production of admissible evidence at trial. (Doc. No. 73).

**Ruling**: Given that the only DOT physical in effect at the time of the accident was that conducted on June 22, 2010, Plaintiff's request to obtain medical authorization to secure the medical records from Byrd's June 22, 2010 DOT physical is hereby **GRANTED**. However, Plaintiff has not provided the Court with authority rendering the DOT physicals conducted *after* the accident permissible for the ordering of production. As such, the Court believes Plaintiff's request for all other medical records surrounding DOT physicals – December 22, 2010; June 23, 2011; and December 7, 2011- is a fishing expedition and is hereby **DENIED.**

### (D) Authorization to Obtain Byrd's Employment Records

Plaintiff believes Byrd was in violation of FMCSR hours of service regulations at the time of the crash due to the following: (i) Byrd had driven in violation of the hours of service regulations at least twice prior to the subject crash; (ii) Booker destroyed Byrd's employment hours logs for the days prior to the crash from August 3-7, 2010, despite receiving an evidence preservation letter from Plaintiff[3]; and (iii) much of the information in Byrd's logs that Booker did not destroy, Plaintiff asserts is false. As such, Plaintiff has requested that Byrd sign an employment authorization to permit Plaintiff to obtain Byrd's employment records from other DOT regulated employers because they are reasonably calculated to lead to the discovery of admissible evidence, particularly in light of Plaintiff's punitive damage claim. (Doc. No. 70, 71, & 76).

Defendant states courts do not embrace such a broad view of discovery unless and until a Plaintiff has placed his or her entire employment history at issue by claiming permanent lost wages or earning capacity. Furthermore, Byrd's prior hours logs violations occurred over a 25 year period and Defendants at all times in this case limited their production of driver's daily logs and supporting documents to the documents needed for Plaintiff to fully evaluate Defendant Byrd's compliance with hours of service regulations on the date and time of the accident. There are several applicable hours of services rules at play here.[4] Compliance with the 70 hour rule can be fully evaluated by reviewing 8 days of driver's daily logs leading up to the accident or logs evidencing a 34 hour period of continuous off duty time, which restarts the 70 hour computation prior to the accident. Therefore, in any given trucking case, the relevant and discoverable time period of driver's daily logs is at most 8 days and even shorter if a 34

---

[3] As a business practice, Booker claims it destroys logs after 180 days. (Doc. No. 73).
[4] (a) No more than 11 hours of driving after a 10 hour break [11 hour rule]; (b) No more driving after being on duty for 14 hours after a 10 hour break [14 hour rule]; (c) No more than 70 hours on duty in any 8 day period [70 hour rule].

hour restart has occurred. Defendants argue this case involves a 34 hour restart. Byrd was off duty from August 8, 2010 to August 10, 2010 and did not come back on duty until August 11, 2011. As such, any request for documents before August 8, 2010 is not properly limited in time. Defendant claims it has appropriately produced these logs as the three day period Byrd was off duty easily qualifies for the 34 hour restart and makes considerations of the 70 hour rule moot. Finally, Defendant states it has not been disingenuous in its representations. (Doc. No. 73).

**Ruling**: Missouri recognizes a right of privacy in personnel records that is "fundamental" and should not be lightly disregarded or dismissed. State ex rel. Delmar Gardens North Operating LLC v. Gaertner, 239 S.W.3d 608, 611-612. However, this does not mean that employment records are entirely undiscoverable in every case. Id. Where the information requested in the personnel file is sufficiently related to the issues in the pleadings, it is discoverable. Id. A request for an entire personnel file, however, is overbroad. Id. In this case, Plaintiff seeks authorization for employment records for Defendant spanning over a 25 year period. This is overly broad and appears to be a fishing expedition not properly limited in time and scope. As such, Plaintiff's request is hereby **DENIED.**

### III.     Second Motion to Compel (Doc. No. 102)

**(A) Sammy Byrd's Cell Phone Records**.

Plaintiff seeks Sammy Byrd's cell phone records. Defendants claim Defendant Byrd was off duty on August 8-10, 2010 in order to gain the benefit of a 34 hour restart under the federal hours of service regulations. Plaintiff's position is that Defendant Byrd cannot claim a 34 hour restart because his activity during that time frame included tasks which are considered "on duty" time under federal regulations. Although his testimony is unclear, Defendant Byrd

7

Case 4:11-cv-00690-FJG   Document 113   Filed 01/30/13   Page 7 of 12

testified that he identified, procured and delivered a tractor to Booker for lease during these dates. In support of Defendants' attempt to classify his work in obtaining and delivering the tractor as "off duty" time, Defendant Byrd testified in his deposition that he did not speak with anyone from Booker during the days in question. Plaintiff seeks Byrd's cell phone records to determine what, if any, communication Defendant Byrd had with Booker on any of these dates. (Doc. No. 102, 103, & 105).

Defendants agreed to produce Byrd's cell phone records on January 16, 2013 (Doc. No. 104).

**Ruling**: This request is hereby **MOOT**.

**(B) Truck Accident Report and Email from Safety Director**.

Defendants identified a truck accident report completed by Defendant Byrd and allegedly provided to Defendant Booker's insurance company on September 16, 2010. Defendants also identified an email synopsis of the crash Booker safety director Cherie Cade provided to Booker's insurance company. Defendants refuse to produce the requested documents on the grounds that the documents fall within the insurer-insured privilege and work product doctrine. Plaintiff argues that these materials should be produced because: (1) Texas law applies[5] and does not recognize the insurer-insured privilege; and (2) the work product privilege is inapplicable. Further, Byrd's accident report is the only writing from Byrd memorializing his version of what happened. Accordingly, Plaintiff requests Defendants produce Byrd's accident report and Cade's email relaying information to the insurance

---

[5] Plaintiff argues Texas law applies given that the insurance contract was executed in Texas and Booker is a Texas corporation.

company regarding the crash. Plaintiffs state even assuming Missouri privilege law applies, the documents are not privileged because they were not made to or for the insurer's counsel. (Doc. No. 102, 103, & 105).

Defendants state Plaintiff does not have a substantial need for the documents requested. Plaintiff's counsel deposed Byrd for a full day on May 9, 2012. The truck accident report was dated September 16, 2010, over a month after the accident. Furthermore, Plaintiff has the accident report from the investigating officer detailing his discussions at the scene of the accident, had an opportunity to ask the investigating officer questions during his deposition, has the reports generated by the ambulance personnel that responded to the scene and had an opportunity to ask both EMS personnel Mary Graham and Debbie Ferguson questions during their depositions about their time at the scene of the accident. Defendant states it has produced the accident report sent by Cherie Cade to the insurance company and thus, this point is moot. However, Defendants maintain that the email communication from Cheri Cade to the insurance adjuster and the report authored by Sammy Byrd for the insurance company cannot be properly discovered as they are protected from disclosure by the insured-insurer privilege. Defendants state Missouri law applies here and thus, insurer-insured privilege is recognized. (Doc. No. 104).

**Ruling**: In diversity cases, privileges are determined according to the state law that supplies the rule of decision. Fed. R. Evid. 501. Rule 501 does not, however, specify which state's privilege rules control. Pritchard-Keang Nam Corp v. Jaworski, 751 F.2d 277, 281 n. 4 (8th Cir. 1984). A federal court must apply the forum's conflict of laws rules. Id. This case was brought in Missouri, so Missouri choice of law rules apply. Id. No Missouri case law has decided what the specific choice of law rule is regarding privilege. Id. Nevertheless, the

9

general rule is that the law of the forum governs admissibility of evidence. Id. As such, Missouri's privilege law governs this case. According to Missouri law, statements made to a person's liability insurance provider concerning an event which is the basis of a claim against him and which is covered by his liability insurance coverage policy are privileged communications. State ex rel. Tillman v. Copeland, 271 S.W.3d 42, 45-48 (Mo.Ct. App. 2008). Because they are privileged, it is immaterial whether "the plaintiff has substantial need for said statements in preparing for trial...." Id. As such, Plaintiff's request is **DENIED**.

### (C) Safety Director Discussions with Byrd.

Plaintiff seeks documentation of Booker safety director Cherie Cade's discussions with Defendant Byrd about his driving logs. While Defendants claim there is no documentation reflecting any discussion between Booker and Byrd regarding his logs prior to the crash, Defendants objected to providing any such documentation created after the crash. This means Defendants have, but are withholding, documentation of conversations Booker had with Byrd about his logs after the crash. Plaintiff states that given Booker's destruction of Byrd's logs despite receiving a timely letter asking that they be preserved, the requested documentation is particularly relevant. Plaintiff states Federal Rule of Evidence 407 does not apply here. At a minimum, such documentation is reasonably calculated to lead to the discovery of admissible evidence. (Doc. No. 102, 103, & 105).

Defendants state Plaintiff's request is overly broad. As Defendants stated previously, Byrd's logs were not destroyed inappropriately. Defendants state they produced the appropriate logs. Further, post-accident and/or subsequent actions taken by Booker are not the proper subject of discovery and would not be admissible at trial. (Doc. No. 104).

**Ruling**: Plaintiff's request is hereby **DENIED**. Plaintiff has provided no authority as it relates to this issue. Further, the Court is not aware of any spoliation issues other than that which is alleged briefly and vaguely by the Plaintiff above. Should spoliation be of concern to Plaintiff, she should raise this issue separately with the Court.

**(D) Spotlight on Safety Materials**.

Cade testified that Booker does a weekly newsletter for the drivers called Spotlight on Safety to discuss safety issues. This newsletter was started after the crash. Booker had no written safety policies at the time of the crash so Booker's Spotlight on Safety materials are the only written materials of Booker's safety policies. Plaintiff states that regardless of when they were created, the materials are potentially relevant to the issues in this case and are, at a minimum, reasonably calculated to lead to the discovery of admissible evidence. As such, Plaintiff requests that Defendants produce the materials. (Doc. No. 102, 103, & 105).

Defendants state the material that is the subject of this request did not exist before the accident in question. Post-accident and/or subsequent actions taken by Booker are not the proper subject of discovery and would not be admissible at trial. (Doc. No. 104).

**Ruling**: Federal Rules of Evidence 407 states evidence of subsequent remedial measures is not admissible to prove fault. The Advisory Committee Notes further states that courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees. Safety bulletins, similar to newsletters, have been held to be inadmissible evidence in Court. Everts v. Altec Industries, Inc., 159 Fed.Appx. 284 (2nd Cir. 2005). Although Plaintiff states that these

newsletters are essential to demonstrating Booker's safety policies, these policies were not in effect at the time of the accident and thus, are not relevant nor admissible.  As such, Plaintiff's request is hereby **DENIED**.

    **IT IS SO ORDERED**.


Date: January 30, 3013                                               **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                               Fernando J. Gaitan, Jr.
                                                                                   Chief United States District Judge